Caeuthebs, J.,
delivered the opinion of the court.
This action was brought to recover a penalty of $50 *119 from the defendant, for failure to hold an election for officers of the corporation of Alexandria, on the second Monday of February, 1852, as required by the charter of said town.
A recovery was had before the justice of the peace, but on appeal to the circuit court, the plaintiff failed upon the ground, that the judge charged that the provision in the charter, by which ihe penalty was created, had been repealed by the act of 1849-50, ch. 17, §16.
The act of 1847-8, ch. Ill, § 10, makes it the duty of the sheriff of DeKalb county to hold the election for town officers, aldermen, &c., on the second Monday of February, of each and every year, and “for failure to hold said election, or causing the same to be done, said sheriff shall forfeit and pay the sum of fifty dollars, to be recovered by action of debt, before any justice of the peace for DeKalb county, in the name of the mayor and aldermen, for the use of said corporation of Alexandria.”
In 1849-50 a general act was passed, providing for holding the election for officers of town corporations at any other times than those prescribed in the charters, if omitted for any cause, to be held on the charter days, and giving validity to such elections. The argument made is, that the reason and cause of the penalty, in the act of 1848 was, that if the officers were not elected on the day designated by the chartex1, no subsequent election would be valid, and that as this difficulty was removed by the act of 1850, it was an implied repeal of the penally. And so the law was charged by the ¡circuit judge. We cannot concur in this reasoning or *120 conclusion. The two acts can well stand together, they are perfectly consistent with each other.
It is no sufficient argument in fayor of an implied repeal of an act of the legislature, that some of the evils provided against are subsequently removed.
The penalty is for a failure of duty in a public officer. Some of the consequences of that neglect to the injury of the public, are removed by a subsequent act, but the duty still remains, as well as the prescribed penalty for neglect. Cooke 338. But the act of 1835, ch. 49, Car. & Nich. 277, • is of the same purport as the act of 1850.
But upon another ground, assumed in argument, we think the judgment below must be sustained.
The clause in the act of 1847-8, upon which this action is founded, is not “the law of the land,” and therefore cannot be enforced without an infraction of the ■constitutional rights of the defendant.
The principles settled in the case of Budd vs. The State,* 3 Hump. 490, are, as we think, conclusive in their *121 application to this case. This case is based upon see. 8, in article 1, of our constitution, which is in these words:
“That no freeman shall be taken, or imprisoned, or disseized of his freehold, liberties or privileges, or outlawed or exiled, or in any manner destroyed or deprived of his life, liberty or property, but by the judgment of his peers or the law of the land.”
The meaning of the phrase 11 law of the lana!” is so frilly expounded in the case above cited, and the previous cases of Vanzant vs. Waddle, and Walley's heirs vs. Kennedy, and the Bank of the State vs. *122 Cooper, 2 Yerg. 554, 560, 599, Officers vs. Young, 5 Yerg. 320, that it would be unnecessary now to dwell upon that subject, as no additional light can be shed upon it. Nothing is left to be done but to apply the principles so well settled to new cases as they may arise before us.
The '•'■law of the land,” then, in the sense of the constitution and in reference to the acts of the legislature, is an act which extends to and embraces all persons who are or may come into the like situation and circumstances.
*123 There are more than seventy sheriffs in the State. This act of assembly prescribes a penally against the sheriff of DeKalb, or “deprives him of his property” for not performing a certain duty. To make this legislation the “law of the land” it would have to be applied to all other sheriffs in the State of whom the like duties are required.
The act then does not apply to and affect all persons or officers who are or may be in the same situation and circumstances, and is therefore partial and limited in its operation, and consequently not the “law of the land” in the sense of our constitution.
*124 It is no answer to this objection, that the penalty complained of is prescribed in a charter of incorporation, and is for that reason saved from the constitutional inhibition.
This point is referred to, discussed and decided in the case of Budd vs. The State, before cited. The court there say, it is to be regarded as if it were a separate and distinct act of one section.
This is a question of interest and importance, but it is deemed useless, if not improper, to enter again into its discussion, as it has been exhausted and clearly settled by our predecessors in the cases to which refer- *125 cnee has been made, and others on the same subject.
The clause in the constitution, as well as that against private and partial legislation, contained, in the 'Tth section of the 10th article, there is reason to believe is too much disregarded or overlooked by our legislature, and ought to be more effectually guarded.
The judiciary must magnify and protect the supreme law.
Let the judgment be affirmed.

Note. — The defendant, Budd, was indicted in- the circuit court of Davidson county, in the year 1841, for making a false entry as one of the clerks of the Union Bank of Tennessee. He was tried and convicted of the charge. The Union Bank was incorporated in 1882. By §22 of the aet of incorporation, “ if the cashier or any other of the officers, agents or servants of said corporation, shall embezzle, and without authority from the president and directors of said bank, appropriate any of the funds of said corporation to his own use, with intent to cheat and defraud the president and directors and company of said bank, or shall fail to make correct entries, or shall make false entries upon the books of said bank, with intent to defraud said bank, or any. other person whatsoever, — said officers, agent or servant of said bank, shall be held and deemed guilty of felony, and shall upon conviction thereof be sentenced to confinement in the jail and penitentiary of this State, for a period of not less than five, nor more tha» twenty-one years.” 1
*121 Upon this section the defendant was indicted. At the March term, 1842, of the criminal court of Davidson, to which the cause had been transferred, he was put upon his trial before Turner, Judge, and a verdict of guilty was rendered against him and judgment rendered thereon. The court refused him a new trial and he appealed in error to this court. In this court the judgment was arrested and the defendant discharged.
The learned Judge, Reese, who pronounced the opinion of the court, after disposing of the other questions involved in the case, as to the main question discussed at the bar whether or not §22 of said act of incorporation was a ‘‘law of the land” in the sense of the constitution, proceeded thus: “ But a graver and weightier question exists. That question is, whether, in reference to our bill of rights, §22 of the act referred to, can be regarded and enforced as the law of the land. And it may be remarked as preliminary to this investigation, that it has not been contended here on the part of the State, that any argument in favor of the validity of the section in question, can be founded upon the connection in which it exists, as part of a law granting a charter to the Union Bank; in other words, that it is not to be regarded as part of (he contract between the State and that corporation; and even if so regarded, that it would derive no additional validity from that circumstance. This has been properly conceded; for surely the State as a contracting party would have no greater right to create the felony in question, in reference to the officers of the Union Bank, than it would possess independently of such attitude. The section then is to be regarded as if it stood alone; and. as if, aloof from all connection with the charter of the Union Bank, it had been a statute of one section, enacted after that institution had full corporate existence, with a view to make the felony in question, affecting the officers, agents and servants of that institution. It is an act then creating a new felony in relation to the officers, *122 agents and servants of the Union Bank, and them only. Is this a law of the land in the sense of our bill of rights? Law, to use the definition of Mr. Justice Blackstone, a little modified to suit the genius of our institutions, “is a rule of civil conduct prescribed by the law making power of the State, commanding what is right, or prohibiting what is wrong.” This then is a rule of conduct prescribed by the legislature, and directed to the officers, agents and servants of the Union Bank, prohibiting them from doing what is wrong. What is the Union Bank? It is a legal person having capacity to sue and be sued, to own property and to employ agents and servants. This then is a rule mandatory to the servants and agents of this legal person. It expends all its force upon them. The mere statement of the question, it seems to us goes far towards superseding the necessity of elaborate reasoning on the subject. Not indeed, upon the ground that the officers, agents and servants of this legal person, the bank, are more or less numerous, but because, the officers, agents and servants of this person only, and not of any other persons, are comprehended or affected. If the felony were enacted with regard to the clerks, agents or servants of a merchant, to deter them from embezzlement or false entries, would it be imagined for a moment that it would be regarded as a “law of the land,” and consistent with the billot rights? It is believed none would so contend. And why not? Simply because a law of the land, is a rule alike embracing and equally affecting all persons in general, or all persons who exist, or may come, into the like state and circumstances. A partial law on the contrary only embraces a portion of those persons who exist in the same State, and are surrounded by like circumstances. If peculiar felonies affecting all the people, or certain public officers of East Tennessee, only, were held to be the law of land, it would be difficult to say for what object that clause was inserted in the bill of rights. One of its objects has been stated in various adjudi *123 cations in our State, to have been to protect the feeble and obnoxious from the injury and injustice of the strong and the powerful, and in general to protect minorities from the wrongful action of majorities. This being its scope and purpose, would it not interdict the legislature from passing such an act as is last above referred to, for instance, creating certain acts of non-feasance or malfeasance, of the Register of the Western District, although a public officer, a felony, leaving the Registers of Middle and East Tennessee unaffected by it? Certainly it would. And why? Because the law would not treat similarly all who were in like circumstances; it would therefore be partial, and of course not the law of the land. At the time of the enactment of this statute there were other banks having actual corporate existence, as we can see from our statute book, with like faculties and functions. They were not embraced; other banks had a potential existence, that is, the legislature had power to make others. The act however embraces the Union Bank and its servants alone, and not all who are or may be in like state and circumstances. If as in Alabama and Arkansas, the legislative power being constitutionally expended by the creation of one bank, a felony had been created, limiting itself in its terms to the bank established, we do not doubt, that under such a bill of rights as ours, such law would be constitutional. We do not think the law in question partial, because merchants’ clerks or the public officers called clerks were not embraced, but because the officers, agents and servents of banks in general, persons in like situation and circumstances were not embraced. It matters not how few the persons are, if all who are, or may come into the like circumstances and situations, be embraced, the law is general and not a partial law. The principles here set forth are not new in this State; they are little more than the re-announcement of what *124 ís said in 2 Yerg. 260, 554, 659. 4 Yerg. 202. 5 Yerg. 320, and Jones vs. Perry, 10 Yerg. Those eases, indeed, refer themselves to the operation of partial laws upon civil rights and remedies, 'while this ease, happens to be the application of our bill of rights to a partial law creating a felony. But the principles are identical, and there is certainly no reason why the protection intended to be extended to individuals by the bill of rights, should not be as effective, where their liberty, as well as their property, may be exposed to the operations of a- partial law.
We are duly sensible of the importance of the ease before us, and of the magnitude and value of the interests involved. Although the bank, no doubt, mainly relies for its safety, upon the probity of its officers, and the amount of their bonds, and the solvency of their sureties, still the facts upon this record establish, that they need, also, the safe-guards intended to have been thrown around them by the penalties created in the 22 § of their charter ; and we have the satisfaction to believe that the interval is a brief one, which shall elapse before those safe-guards shall be restored and made-effective in a manner consistent with the public liberty. As to the co-ordinate department, to whose enactment we feel unable to give effect, we cheerfully acknowledge that their intelligence and numbers, the high motives and sanctions under which they, too, act, impose upon us the obligation, when comparing the result of any deliberation of theirs, with the paramount law, which governs us all, to be well satisfied, that in declaring a statute invalid and void, we but obey the mandate of the constitution. But when so satisfied it requires but ordinary virtue and firmness in this court so to pronounce. In this case, we are thus satisfied, and must thus pronounce.”